White, J.
The plaintiffs base their.right of action upon the act' of the general assembly of February 21, 1859, entitled “ an act to authorize the trustees of Greene township, in the county of Scioto, to prosecute, in their name, civil actions in certain cases relative to school lands ceded by Congress to the district of country-known as ‘ French Grant.’ ”
By this act the plaintiffs are authorized, in their name, to institutevand conduct to final judgment civil actions for any trespasser trespasses theretofore committed upon, or for any injury to, right in, or interest, claim, or demand growing out of, the lands situate-in the county of Lawrence, selected by the secretary of the treasury of the United States, for the support of schools within that district of country known as “ French Grant,” in pursuance of an act. of Congress, approved May 20,1826. It is further provided, by the-second section, that all moneys realized out of such suits, after deducting the necessary expenses, shall be appropriated, by the- *12 plaintiffs, for the support of schools in “French Grant.” 56 Ohio L. 260.
The defendants rely, for the support of their demurrer, upon the statute of limitations. It is not claimed that a bar has arisen since the passage of the act referred to; but their position is, that the remedy, for the alleged cause of action, was barred prior to that time. This claim involves an inquiry into the condition of the title to the lands in controversy at the time of the commission of the alleged trespasses.
“French Grant” is a tract of twenty-four thousand acres of *land, situate on the north bank of the Ohio river, in the county of Scioto, which was donated by Congress to certain French inhabitants and actual settlers of the town of Gallipolis. This tract forming no part of any original surveyed township, the inhabitants thereof derived no benefit from the lands reserved for ■school purposes, until provision was made therefor by the act of Congress of May 20, 1826, entitled “ an act to appropriate lands for the support of schools in certain townships and fractional townships, not before provided for.” By section 3 of this act it was provided that there should be selected by the secretary of the treasury, in a manner therein provided, one section and one quarter section of land, for the support of schools within that tract of country usually called the French Grant, in the county of Scioto, in the .State of Ohio. 1 Chase’s Stat. 89.
Under this section, the lands in controversy were selected, and the first step toward ascertaining where the title was vested depends upon the construction of this statute. The tenure of-the •land selected for the support of schools in the French Grant, upon a proper construction of this act, in our opinion, is the same as that of the lands authorized, by the first section, to be selected for townships. Both classes of land, when selected, are to be held by the same tenure and upon the same terms, for the support of schools, as section 16 is held. It is true, the second section, which prescribes the tenure, applies only, in express terms, to the land selected for the townships; but the plain implication is, that it also equally applies to the land selected for French Grant.
By the ordinance and resolution passed by the convention of Ohio, November 29, 1802, modifying the propositions made by ■Congress, in the act of April 30 of the same year, it was required that all lands to be appropriated by the United States for the sup *13 port of schools should be vested in the legislature of this state, in> trust for said purpose. 1 Chase’s Stat. 74. Congress, by act approved March 3, 1803, confirmed its propositions to the requirements of the ordinance, and declared that section 16, and the other-lands appropriated for the use of schools in the State of Ohio should be vested in the legislature of the state, in trust for the use of ^schools, and for no other use, intent, or purpose whatever. 'And it was further declared that the appropriation of lands for schools, made by said act, was in conformity with, and in consideration of, the conditions agreed on by the State of Ohio, by the ordinance of the convention of said state. The vesting of these lands, by the act of Congress, in the legislature, in pursuance of the ordinance of this state, is the same, in legal effect, as if the title had been vested in the state eo nomine. They thereby became the property of the state, in trust for the townships or districts for which they were designed. If the title had been declared,, in- terms, vested in the state, the management and disposition of the lands, in the execution of the trust, would, notwithstanding,, have been under the sole control of the legislature. The fact that the title is declared to be vested in that department of the govern., ment upon which would devolve, from the nature of the case, the duty of providing for the execution of the trust, in no way lessens-the rights or responsibilities of the state, or changes its relations to-the property. This, also, is evidently the view which the legislature itself has taken of these landq; for, in the several acts for the-punishment of trespassers on the public lands, the school, ministerial, and canal lands are all described as the property of the state.
Being of opinion, therefore, that at the time of the commission of the alleged trespasses, the title to the lands described in the-petition was vested in the state, the question arises, whether the-remedy upon the cause of action stated is barred by the statute of limitations? We are of the opinion that it is not. The general words of the statute do not include the government. The doctrinéis well settled, in the absence of a statute to the contrary, that nolaches is to be imputed to the government, and against it no time runs so as to bar its rights. Parsons, C. J., in Stoughton et al v. Baker et al., 4 Mass. 228 ; Angelí on Dim. 40, sec. 37. And it has-been considered that in all representative governments, where the power is delegated to others, and of necessity to be exercised by *14 -them, if exercised at all, the reason of this doctrine is, at least, -equally cogent as in England. The People v. Gilbert, 18 Johns. 227.
*But it is claimed that the act of February 13, 1853, entitled “ an act to authorize the sale of the school lands belonging to the French Grant, in the county of Scioto ” (51 Ohio L. 28), in connection with the act of April 16, 1852, entitled “ an act to regulate the sale of school lands, and surrender of permanent leases thereto ” (50 Ohio L. 168), gave a right of action to the plaintiffs for the trespasses complained of; and that consequently the remedy was barred in four years from the passage of the act first named. Upon .an examination of these acts, we are of opinion that the claim is unfounded.
It is further claimed that the act of March 31, 1837, entitled “ an .act to punish trespassers on the public lands ” (S. & 0. Stat. 441-443), and the act amendatory thereof, passed March 11, 1842, gave a remedy for these trespasses, which was barred in three years. These acts arc of a criminal nature, were designed to protect the public lands, and punish the offenders. They neither merged the ■civil remedy, nor were they designed as a substitute for it. They prescribed no limitation for the commencement of prosecutions.
The only limitation is found in the act of January 15, 1845 (1 S. .& C. Stat. 424). This act imposes a limitation of three years to the prosecution of all offenses, misdemeanors, etc., not punishable capitally or by imprisonment in the penitentiary, and has no reference to civil remedies.
The remaining ground relied upon, in support of the demurrer, is the claim that the state is a trustee, having no beneficial interest in the subject-matter in controversy, and that, therefore, the bar of of the statute applies. Without inquiring how this might be, where a remedy for the alleged wroDg exists in the beneficiary of the trust, yet all the reasons for such claim cease, where the beneficiary has no such right, and is chargeable with no laches. To ¡deny a remedy to the beneficiary because the legal right is in the state, and, at the same time, to admit an exception to the general rule and apply the statute against the state, on the ground that the legal right is held in trust, would involve palpable inconsistency, and create an exception without any reason therefor. The beneficiaries in the trust are the inhabitants of the district of country known as French Grant. They have never been authorized to ^maintain an action against the defendants for the cause stated *15 in the-petition, nor could they sue the trustee—the state—to compel an execution of the trust. The rights of the plaintiffs in the premises rests wholly on the statute first referred to, since which, it is admitted, no bar has arisen.
The_statute of limitations has relation to the remedj’-; and, •where no cause of action has accrued in favor of a party qualified to institute process, the statute has no application. 8 Watts, 44; 7 Ohio St. 289 ; Ang. Dim. 61, sec. 54.
In the present case a cause of action existed in favor of the state against the defendants ; and it was for the legislature to determine whether it should be prosecuted. No one could sue on behalf of the state without her authority, express or implied. A cause of notion is not sufficient to justify the institution of a suit by a third person—there must also be authority, from the plaintiff, to sue.
It was competent for the legislature, in authorizing the suit, to ■direct in what name, and by whom it should be brought. By the act of February 21, 1859, it invested the plaintiffs with this authority, which it could as well do as to direct the public officers to bring the suit in the name of the state. Under this authority the original suit was brought, and we see no reason, if the facts exist as they are alleged, why it may not be maintained. It is suggested, though not argued, that the act under which the plaintiffs sue is retroactive. We regard it merely as remedial in its operation on pre-existing rights and liabilities. Rairden & Burnett v. Ward’s Adm’r, decided at the present term (15 Ohio St. 207).
The judgment of the court of common pleas will therefore be reversed, the demurrer to the petition overruled, and cause remanded for further preceedings.
Brinkerhoxx, C. J., and Scott, Dax, and Welch, JJ., concurred.